UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM MICHAEL PARK,

    Plaintiff,                                   CIVIL ACTION NO. 14-10982

  v.

                                         DISTRICT JUDGE ROBERT H. CLELAND
                                         MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

    **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment should be **DENIED**, and that of Defendant **GRANTED**, as there is substantial evidence on the record that claimant retained the residual functional capacity for a limited range of light work.

**II.    REPORT**

    **A.    Introduction and Procedural History**

    Plaintiff filed an application for Social Security Disability Insurance Benefits on April 13, 2011, alleging that he had become disabled and unable to work on April 4, 2011, at age

38, due to degenerative cervical disc disease, right shoulder pain, bilateral carpal tunnel syndrome, obesity and an anxiety disorder. Benefits were initially denied by the Social Security Administration. A requested de novo hearing was held on September 13, 2012, before Administrative Law Judge (ALJ) Roy L. Roulhac. The ALJ found that the claimant retained the residual functional capacity to perform a limited range of light work providing a sit-stand option at will where he would not be exposed to unprotected heights, vibrating tools or moving machinery. The Law Judge further restricted claimant from jobs requiring the climbing of ladders, ropes and scaffolds. He could only occasionally stoop, bend, kneel, crouch and crawl. Claimant was also found to be unable to frequently reach over his head with his right arm. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment, and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was 40 years old at the time of the administrative hearing (TR 55). He had been graduated from high school, and had been employed during the relevant past as a truck driver and construction laborer (TR 55, 75). Claimant alleged disability since February 2011, due to severe back, neck and right shoulder pain (TR 59, 65, 70-71). He estimated that he could sit for perhaps two hours, stand twenty minutes, walk for ten minutes and lift about ten pounds (TR 62-63). Pain medications provided only temporary relief, but the authorized medical use of marijuana reduced his pain level by thirty percent (TR 64, 68). Claimant remained capable of driving an automobile, and he was able to help with some household

chores (TR 60-62). Due to a rotator cuff injury, he allegedly was unable to lift, push or pull using his right shoulder (TR 68). Hand pain, associated with tingling and numbness, allegedly prevented claimant from picking up small objects or buttoning/zipping his clothing (TR 71-73). He allegedly had to lie down several times a day, for up to twenty minutes at a time, to relieve chronic fatigue (TR 71-72).

A Vocational Expert, Diane Regan, classified Plaintiff's past work as medium to heavy, semi-skilled activity (TR 75). The witness testified that there were no jobs for claimant to perform if his testimony were fully accepted[1] (TR 76). If he were capable of light work, however, there were numerous unskilled visual and general inspection, as well as surveillance system monitoring jobs, that he could perform with minimal vocational adjustment (TR 76). These simple, routine jobs provided a sit-stand option at will, and did not expose workers to unprotected heights, vibrating tools or moving machinery. There would be no requirement to climb ladders, ropes or scaffolding. There would be only an occasional need to use the right arm for overhead reaching or lifting (TR 76).

**B.     ALJ's Findings**

The Administrative Law Judge found that Plaintiff was impaired as result of degenerative disc disease affecting his cervical spine and neck, a torn right shoulder rotator cuff, bilateral carpal tunnel syndrome, obesity and an anxiety disorder, but that he did not have an impairment or combination of impairments severe enough to meet or equal the

---

[1] The witness opined that, if claimant were off task for longer than 20 percent of the day in order rest, all work activity would be precluded (TR 76).

Listing of Impairments. The ALJ recognized that claimant's joint pain limited him to jobs that allowed a sit-stand option at will with no exposure to unprotected heights, vibrating tools or moving machinery. He was unable to frequently use his right arm to perform any overhead reaching, and he was unable to climb ladders, ropes or scaffolding. Claimant was also limited to occasional handling of small objects. Nevertheless, the Law Judge found that the claimant retained the residual functional capacity to perform a significant number of light jobs, as identified by the Vocational Expert (TR 33-46).

### C.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if substantial evidence also

supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff maintains that his cervical spine pain was severe enough to meet section 1.04 of the Listing of Impairments, and that the ALJ improperly rejected the clinical findings and disability opinion of his treating doctors. Defendant countered that the Law Judge reasonably assessed Plaintiff's impairments before concluding that he remained capable of performing a limited range of light work activity.

**D.      Discussion and Analysis**

After review of the record, I suggest that there is substantial evidence on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity for a restricted range of light work activity. Contrary to Plaintiff's assertion, the medical evidence of record does not support his allegation of totally disabling joint pain. The ALJ's decision is consistent with the specific limitations imposed by examining physicians.

Contrary to Plaintiff's contention, the medical evidence fails to demonstrate that his cervical spinal impairment met or medically equaled <u>all</u> of the requirements of Section 1.04 of the Listing of Impairments. The ALJ concluded that claimant's degenerative disc disease of the cervical spine did not meet or medically equal the Listing because he did not suffer from the requisite motor and sensory deficits. In addition, the ALJ found no evidence of spinal arachnoiditis or stenosis resulting in pseudo-claudication (TR 34).

Examining doctors of record found that Plaintiff's back, neck, shoulder and overall musculoskeletal system functioned within normal limits for a 40 year old male (TR 266, 451, 458, 460, 470, 473). Following an examination in April 2011, Dr. Gerald Schell observed that claimant did not suffer from any focalized neurological deficits. The doctor determined that claimant's cervical spine condition could be treated conservatively (TR 391). Physical therapy notes taken between April 13 and May 2, 2011, revealed that claimant's neck and back were non-tender with painless range of motion. Motor and sensory functions were normal, and claimant's extremities exhibited normal ranges of motion (TR 300-301). A cervical CT scan in June 2011, revealed only a mild loss of cervical lordosis (TR 306).

Dr. R. Scott Lazzara, a consulting physician retained by the Commissioner, noted on September 28, 2011, that claimant's cervical flexion, extension, and left rotation were in the normal ranges (TR 374). Plaintiff told the doctor that he currently working one day per week at a packaging plant lifting pigs weighing 50 to 100 pounds (TR 373). The claimant added that he was able to drive, and that he could perform some household chores and yard work. Dr. Lazzara reported that Plaintiff's motor strength and sensation were intact, and that he was not experiencing any neurological impairments. The doctor concluded that Plaintiff had only a mild degree of impairment (TR 376-377).

An EMG study conducted in January 2012, revealed no evidence of acute cervical radiculopathy (TR 527). Dr. Demian Naguib, a treating physician, reported on April 26, 2012, that he saw no evidence of spinal cord compression, neurological deficits or signs of myelopalthy. Claimant's strength was measured at 5/5 in all extremities and his sensation

was normal. Dr. Naguib opined that Plaintiff could carry ten pounds frequently and twenty pounds occasionally (TR 519). These medical reports, from both treating and consultative physicians of record, provide substantial evidence supporting the ALJ's determination that claimant's cervical spine impairment was not severe enough to meet or equal Listing 1.04 of the Listing of Impairments.

Plaintiff relies heavily upon the fact that Dr. Naguib opined in April 2012, that claimant could not perform any competitive employment[2] (TR 503-507). It is well settled that opinions of treating physicians should be given greater weight than those of one-time examining doctors retained by the government. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). However, the opinion of a treating physician is entitled to deference only if his clinical findings are uncontradicted by substantial medical or other evidence, and if the opinion is based on detailed, clinical, diagnostic evidence. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). Since there is evidence in the record inconsistent with Dr Naguib's functional restrictions[3], his assessment need not have been given any special weight. Miller

---

[2]In that assessment, the doctor concluded that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations. Dr. Naguib indicated that claimant frequently experienced pain or symptoms severe enough to interfere with the attention and concentration needed for simple work tasks (TR 504). Dr. Naguib also found that Plaintiff could walk 3 to 4 city blocks, sit for about 2 hours in an 8-hour day, and stand/walk for less than 2 hours in an 8-hour day. The doctor added that claimant required an unscheduled break every hour for 5-10 minutes (TR 504-505).

[3]The ALJ rejected the doctor's assessment, setting forth persuasive reasons for doing so (TR 41-42). The ALJ indicated that Dr. Naguib's opinion were inconsistent with his own clinical finding that there was no evidence of spinal cord compression or motor/sensory losses in the upper extremities (TR 42). The ALJ also noted that the disability statement was inconsistent with the certification from claimant's primary care physician, Dr. Bassam Afaneh, that Plaintiff could work as a commercial driver, pursuant to Department of Transportation ("DOT") standard (TR 42). Finally, Plaintiff testified that he remained capable of playing baseball, and that he was discharged from physical therapy for failing to attend 4 of his last 12 sessions. Claimant also acknowledged that he took less Flexeril than he was prescribed by his primary care physician.

v. Secretary, 843 F.2d 221, 224 (6th Cir. 1988). Under these circumstances, the totality of the evidence must be considered. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).

It is the rare case, indeed, the exception, in which every piece of evidence points incontrovertibly towards a decision to deny benefits. There was evidence in the record which, taken in isolation, might suggest that the Plaintiff was totally disabled and that his testimony was fully credible. However, special deference is owed to the credibility findings of the ALJ, who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said and how it was said, and to consider how that testimony fit in with the rest of the medical evidence. Such observation is invaluable and should not be discarded lightly. Beavers v. Secretary, 577 F.2d 383 (6th Cir. 1978). See also Williamson v. Secretary, 796 F.2d 146, 150 (6th Cir. 1986).

By establishing that he could not return to his past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that he had the vocational qualifications to perform alternative jobs in the economy, notwithstanding his various impairments. The Commissioner, however, met the burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to a hypothetical question that took into consideration claimant's educational and vocational background, along with

---

As of May 2012, Plaintiff had not taken Tramadol, Tylenol #3, or Flexeril for nearly three months (TR 44). The ALJ properly found that claimant's activities were inconsistent with the disability statement of Dr. Naguib.

his significant impairments, the Vocational Expert testified that there were numerous unskilled visual and general inspection, as well as surveillance system monitoring jobs, that he could perform with minimal vocational adjustment (TR 76). These simple, routine jobs provided a sit-stand option at will, and did not expose workers to unprotected heights, vibrating tools or moving machinery. There would be no requirement to climb ladders, ropes or scaffolding. There would be only an occasional need to use the right extremity for overhead reaching or lifting (TR 76). Given the objective clinical findings of the examining physicians of record, there is substantial evidence in the record that Plaintiff retained the residual functional capacity for a restricted range of light work activity.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.

Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within ten (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ Charles E Binder
Dated: August 21, 2015                        CHARLES E. BINDER
                                        United States Magistrate Judge